## Armstrong v. Advance Thresher Co.

1. A letter received by due course of mail from a party, in reply to a letter addressed to such party, is presumptively genuine, and admissible in

evidence without further proof of the identity of the party purporting to write the reply.

2.  A letter received by due course of mail, purporting to be written by the managing agent of a corporation, in reply to a letter addressed to the corporation and sent through the mail, is presumptively genuine and authorized, and is admissible in evidence without further proof that such person is the managing agent of such corporation, or that the letter was written by the party by whom it purports to be signed.

(Syllabus by the court.   Opinion filed Feb. 17, 1894.)

Appeal from Miner county court.   Hon. D. D. BALDWIN, Judge.

Action on a contract.   There was judgment for plaintiff, and defendant appeals.   Affirmed.

The facts are fully stated in the opinion.

*Wynn & Nock*, for appellant.

*D. D. Holdridge*, for respondent.

CORSON, P. J.   The plaintiff in his complaint alleges, in substance, that the defendant was a corporation; that on the 24th day of December, 1891, the defendant and plaintiff entered into a contract by the terms of which the plaintiff was to keep a span of horses for the defendant; that he kept said horses from December 24, 1891, to April 22, 1892, a period of 119 days; that such keeping was reasonably worth the sum of 75 cents per day, making a total of $89.25; and that the same had not been paid.   The answer was a general denial.   The errors assigned are that the court erred in excluding certain evidence, admitting certain letters, and denying defendant's motion to direct a verdict for defendant at the close of plaintiff's evidence. For convenience we shall consider the last assignment of error first in order

1.   On the trial the plaintiff, as a witness in his own behalf, testified substantially as follows:   That he was engaged in the business of keeping a livery and feed stable; that on December 24, 1891, J. O. Humphrey requested him to keep a team—a span of horses—from that time on, for the Advance

Thresher Company, and that it was agreed between them that plaintiff should keep the team for 75 cents per day; that he kept the team in his stable until April 22, 1892, 119 days; and that the bill had never been paid. He further testified, on cross examination, that Mr. Cox, deputy sheriff, put the team in his stable on December 8th; that he had possession of the team when he made the contract with Humphrey. J. B. Fox, called as a witness for plaintiff, testified as follows: "On December 24th I was sheriff. I know J. O. Humphrey. I saw him about December 24, 1891. Q. Did you see a certified copy of the mortgage? A. I did. Q. What did Mr. Humphrey do or say to you on December 24, 1891? A. I can't say as to what he said on the 24th. Mr. Humphrey represented himself as the agent of the Advance Thresher Company, and said I had levied on some property the Advance Thresher Company had a mortgage on, and he produced a certified copy of the mortgage, and I said I had the property described in the mortgage. I wrote out a release, and handed it to my deputy, and had it served on Mr. Rathbun. Mr. Cox was acting as my deputy at that time. I did see the horses in Mr. Armstrong's possession after December 21st. Suppose Mr. Humphrey took possession of the machine described in the mortgage. Cross-examination: Mr. Humphrey told me he had taken possession of the property. The property, I don't think, was ever taken away. I think Mr. Humphrey told me he took possession of the property next day." Mr. Holdridge, called by plaintiff, testified that one J. S. Mason, of Aberdeen, was the agent of defendant in this state, on whom process could be served; that service of the summons in this action was made upon him, and that the company appeared and defended the action; that he, as attorney for the plaintiff, wrote to said Mason in regard to plaintiff's claim, and in due course of mail received an answer, which was read in evidence, and in which said Mason stated he had forwarded the letter of witness "to the manager at Minneapolis;" that about the same time the witness wrote to the defendant com-

pany at Minneapolis, and by due course of mail received a letter from one Walter Gregory, who signed the letter as manager. This letter is as follows: "Minneapolis, Minn., April 11. 1893. Mr. D. D. Holdridge, Madison, S. D.—Dear Sir: Replying to your letter of April 7th, will say: You say you have written our agent, Mr. Hoffman, but have not had an answer from him. You have made a mistake. We never had an agent named Hoffman. You mean J. O. Humphrey. You wrote a letter to J. S. Mason, of Aberdeen, the other day, regarding this matter, and Mr. Mason sent it to me, and I forwarded it to Mr. Humphrey for attention. This is a matter I do not know anything about. I will also forward this letter from you, and ask him to give the matter attention. Yours truly, Walter Gregory, Mgr." The evidence of plaintiff, uncontradicted, was suf-ficient to establish a contract on the part of the said Humphrey on behalf of the defendant; and the facts that Humphrey had possession of a certified copy of the chattel mortgage, claimed to be the agent of the defendant, and demanded the release of the property on behalf of the defendant, taken in connection with the letters of Mason and Gregory, were sufficient, *prima facie,* to show that the said Humphrey was the defendant's agent, and had authority to do all the necessary acts to pre-serve the property described in the chattel mortgage, and to make the contract for keeping the team. We are of the opin-ion that the facts proven made out a *prima facie* case in favor of the plaintiff, and that the court was clearly right in refusing to direct a verdict for the defendant.

2. The plaintiff was asked, on cross-examination, "Did you know who owned the team from December 8th to the 24th?" This was objected to, and the objection sustained. The claim of plaintiff was for keeping said team from December 24th. We fail to see in what respect the question was material. If the defendant, through its agent Humphrey, made a special con-tract with the plaintiff to keep the team from December 24th, it was immaterial who owned the team prior to that time. The

plaintiff was also asked if he had a stable bill for keeping the team from December 8th to the 24th. What the object of this and similar questions was does does not appear, but we think the questions were not material. The bill for keeping the team prior to December 24th was not in controversy in this action, and whether or not the plaintiff had such a bill was entirely immaterial and irrelevant to any issue in this case. The theory upon which the counsel for the appellant contend that this evidence was admissible is that the defendant claimed that the plaintiff insisted upon the payment of this bill by Humphrey, and, therefore, Humphrey refused to make the contract testified to by the plaintiff. But this theory is not tenable. The defendant had not yet opened its case, and the proof of the facts sought to be elicited, as facts, was immaterial. The witness could no doubt have been asked if Humphrey did not refuse to make the contract, because the witness claimed payment of his prior bill, and any proper question tending to show that the contract testified to by the plaintiff was not in fact made. Questions relating to the making of the contract, and tending to show that it was not made as contended for by plaintiff, would have been proper and legitimate; but the evidence of the existence of the prior bill on the team, of itself, was clearly immaterial and inadmissible. It neither had a tendency to prove or disprove the contract testified to by plaintiff. A party cannot, upon cross-examination, introduce into the case irrelevant and immaterial matters that do not tend to prove or disprove the issues in the case. Counsel for appellant also contend that the admission of the letters from J. S. Mason and Walter Gregory was error, there being no evidence to prove that either Mason or Gregory was the authorized agent of the defendant, "and that the letters were not identified as coming from the parties from whom they purported to come." But we are of the opinion that there was no error in admitting the letters. It was shown by the evidence of Holdridge that Mason was the agent of the company, and it

was proven that the letter purporting to have been written by him was received in due course of mail, in reply to one written by the plaintiff's attorney; and the letter from Gregory was in reply to one addressed to the company, and was received in due course of mail, and the letter purported to be from the manager of the company. The letters were therefore presumptively authorized and genuine, and were properly received in evidence. 2 Whart. Ev. 1328; 1 Greenl. Ev. 573a; Melby v. Osborne, (Minn.) 24 N. W. 253; Davis v. Robinson, (Iowa,) 25 N. W. 280; Enos v. Insurance Co., (S. D.) 57 N. W. 919. Finding no error in the record, the judgment of the county court of Miner county is affirmed.