HERF & FRERICHS CHEMICAL COMPANY, Respondents, v. LACKAWANNA LINE, Appellants.

**St. Louis Court of Appeals, January 24, 1899.**

1. Practice, Trial: MOTION TO STRIKE OUT REPLY. A motion to strike out reply must be overruled if any part of the pleading attacked is sufficient. In the case at bar, the reply took issue on the averment of the answer that the goods arrived on time and therefore it was not subject to be stricken out as an entirety, and the motion to strike out was properly overruled, and also defendant waived it by going to trial on the issues tendered in the reply.

2. **Common Carrier:** NOTICE OF ARRIVAL OF GOODS TO CONSIGNEE. In the case at bar, the testimony tends to show that no notice, personal or through the mail, was received by the deponent; but it does not tend to prove that no notices were received by the other members of the firm, or some employee qualified to receive them for the firm, and the trial court erred in submitting this issue to the jury.

3. **Practice, Trial:** DEMURRER TO THE EVIDENCE. In the case at bar, in view of the failure of plaintiff to adduce any substantial evidence of the liability of defendant under the exemptions of the contract, and under all the facts the demurrer of defendant to the entire evidence should have been sustained.

*Appeal from the St. Louis City Circuit Court.—*HON. JAMES E. WITHROW, Judge.

REVERSED AND REMANDED; JUDGE BIGGS dissents.

MAGEE & KIRBY for respondents.

\* \* \* The evidence at the second and third trials on the question whether the arrival notices had been received by defendant, was exactly the same, consisting of the same deposition and other evidence on this point at each trial. The issues were also identical. At the second trial, as at the third, there was a demurrer to the plaintiff's evidence, which was overruled, and defendant's exception went into the record for this court. The effect of that evidence was, therefore, considered and ruled upon by this court, in the former decision, Judge Bland's language concerning it being: 70 Mo. App. loc. cit. 281. "Respondent gave testimony tending to prove that no such notice was received by them." This decision, upon one of the exceptions in appellant's record, became *res adjudicata* as to that point in the case, and right or wrong, it was controlling upon the trial court at the third trial, and upon this court, on the second appeal. For this court now to reverse its former ruling on that point and to hold that the same evidence did not tend to prove that no such notice was received by consignees,

is in conflict with the following controlling decisions: Metropolitan Bank v. Taylor, 62 Mo. 338; McKinney v. Harvall, 36 Mo. App. 337; Lancaster v. Elliot, 42 Mo. App. 503; Hastings v. Hennessy, 70 Mo. App. 354; Fink v. Ins. Co., 66 Mo. App. 513; Cherry v. Railway, 61 Mo. App. 303; Shoninger v. Day, 61 Mo. App. 366. The question whether Maclagan's testimony constituted "some evidence tending to show that the postal notices were not received" was not open for discussion because, under the same pleadings and proof, this court had already ruled upon it. Second. Because the following facts and questions, decisive of the cause and duly presented by counsel for respondent, in their briefs, have been overlooked by this court: (a) The second opinion of this court decides (assuming a failure of plaintiff's proof to show the nonreceipt of notice), that defendant is not liable unless there was evidence of gross negligence on the part of defendant with reference to tracing. This court must have overlooked the following forceful evidence in the present record, and to which attention was called in respondent's briefs, or it could not possibly have held that there was no evidence of gross negligence. On November 13, 1890, plaintiff, by letter, requested defendant to trace the shipment. No answer was made by defendant to this request. Within a week plaintiff telephoned a similar request. Defendant "did not pay any attention" to it. At least a dozen requests to trace were made by plaintiff.

GEO. S. GROVER for appellant.

The reply was a departure from the cause of action stated in the petition. Stephen on Pleading, 354; 1 Chitty on Pleading, p. 644; Gould on Pleading, 28; 1 Bouvier Law Dict., p. 460; 1 R. S. 1889, p. 543; State v. Grimsley, 19 Mo. 177. The demurrer to the evidence should have been sustained. Kimball v. Brawner, 47 Mo. 399; Wolff v. Campbell, 110 Mo. 119; Bank v. Rail-

way, 132 Mo. 492; O'Bryan v. Kinney, 74 Mo. 125; Railroad v. Cleary, 77 Mo. 634; Hutchinson on Carriers [2 Ed.], sec. 216a; Rankin v. Railroad, 55 Mo. 167; Gashweiler v. Railroad, 83 Mo. 112; Pindell v. Railroad, 34 Mo. App. 683; Standard Milling Co. v. White Line, 122 Mo. 258; Frank v. Railway, 57 Mo. App. 186; State v. Gritzner, 36 S. W. Rep. 41; Corcoran v. Railway, 105 Mo. 406. Upon all the testimony the finding should have been for the defendant. Chemical Co. v. Lackawanna Line, 70 Mo. App. 274, and authorities cited *supra*. The court gave improper instructions at the plaintiff's request, and of its motion. Authorities cited *supra*. The court refused proper instructions asked by defendant. Authorities cited *supra*. The allowance of interest in this case was improper. Eagle Co. v. Railway, 71 Mo. App. 626.

BOND, J.—This is the second appeal in this case, the former appeal being disposed of in 70 Mo. App., page 274. The petition is against the defendant as carrier for non-delivery of a case of chemicals. The answer in addition to a denial, set up a special contract, and pleaded compliance, relieving the defendant from liability as carrier upon transportation on time of the goods, and making it in that event the duty of the consignee to remove the goods from the station at the point of destination within a specified time, in default of which defendant should be entitled to store them at the owner's risk. Plaintiff replied admitting the special contract, but not admitting the goods arrived on time, and alleging further as grounds of recovery, notwithtanding such contract, first, the refusal of the defendant to deliver the goods upon demand therefor and tender of charges; secondly, the failure of the defendant to give the customary notice of the arrival of the goods; third, the failure of defendant upon request made to it on the thirteenth of November, 1890, to trace and locate the goods in a reasonable time. For these reasons the

reply asked judgment for the value of the shipment, averring that it had become valueless and lost to plaintiff. Defendant moved to strike out the reply as a whole. Such motion, like a general demurrer, must be overruled if any part of the pleading attacked is sufficient. Here the reply took issue on the averment of the answer that the goods arrived on time, hence it was not subject to be stricken out as an entirety, and the motion was properly overruled on that ground, as it might well have been for the further reason that defendant did not stand on its motion, but waived it by going to trial on the issues tendered in the reply. Upon appeal from a judgment against it recovered under these pleadings defendant insisted that the trial court erred in refusing its demurrer to the evidence interposed upon the whole case. The goods arrived at New York and were deposited at Pier 19 on October 6, 1890, the point of destination under the bill of lading. It is not claimed that there was any delay in the transportation. Defendant having complied with its contract in that respect under the views expressed on the former appeal (70 Mo. App. 274) it can only be made further liable upon proof by the plaintiff of one or more of the causes of actions set forth in the reply, to establish which the burden of proof rests upon the plaintiff. Davis v. Railway, 89 Mo. loc. cit. 350; Witting v. Railway, 101 Mo. loc. cit. 640; Standard Milling Co. v. Transit Co., 122 Mo. 258. The first cause of action stated in the reply alleging a refusal to deliver the goods upon demand and tender of charges, was not submitted to the jury. This leaves for consideration the evidence relating to the two remaining causes of action alleged in the reply. Taking these in order it becomes necessary first to examine the evidence in the record relating to the alleged failure to give the consignee due notice of the arrival of the goods according to the custom adopted by defendant in New York. To prove this allegation plaintiff introduced as a witness one of the three members of the firm which was the

consignee of the goods.   The deposition of this witness was taken about three years after the delivery of the goods in New York.   He stated in substance that the first knowledge he had of this shipment was the receipt of an invoice and bill of lading therefor by his firm in September, 1890; that he made no effort to get the goods until about six weeks thereafter when he wrote plaintiffs that the shipment had not arrived and asked them to trace it; that the customary method of notice adopted by defendant and other carriers in New York was to send a messenger on the day, or the day after, the arrival of the shipment with notice thereof to consignees.   If this was not heeded it was followed by notices through the mail at intervals from several days to several weeks.   This evidence further testified as follows:

"Q.   I will ask you to state whether any notice of the arrival of this shipment was received by your firm from the railroad company?   A.   I have no knowledge of any notice having been received by the firm."

"Q.   I will ask you to state whether, as your business was then conducted, notices received from railroad companies of the arrival of shipments, were preserved among the papers of your office or not?   A.   They were."

"Q.   I will ask you to state whether you have caused search to be made among the files and papers in your office, where such notices, if received, should have been placed and kept, for the notice of the arrival of these goods, and if such search was made, whether any notices were found?   A.   I made the search myself; I searched the files, and didn't find the notice referred to."

"Q.   State whether the search you speak of was for notices of the arrival of the shipments that we have referred to, as a shipment of 200 pounds of subnitrate of bismuth from the plaintiff company to you?   A.   It was."

The above testimony tends to show that no notice, personal or through the mail, was received by the deponent.   It

does not tend to prove that no such notices were received by the other members of the firm or some employee qualified to receive them for the firm, unless that fact is legitimately inferable from the statement of the witness that in a search made by him three years after the transaction among the files and papers of his firm, where such notices "should have been placed and kept," he failed to find any notice of this shipment. Whether this deduction can be drawn, depends upon the result of a legal analysis of the proof power of this statement of the witness. From his statement that he failed to find any notice of the arrival of the shipment when he searched the "files and papers" in his office an inference may be logically drawn that no notice was placed among such papers originally, or it would have remained there until the search made by this witness about three years thereafter, and taking the fact that no notice was originally placed among such "files and papers" as thus inferentially established, there is still no proof that due notice was not given to some other member of the firm or authorized employee, unless the want of notice to these persons can be inferred from the fact (established by inference only), that no notice was placed among the files and papers about three years before their examination by the witness or when the goods arrived in New York. In other words, unless the statement of the witness affords a legal basis for two inferences, i. e., a presumption that no notice was deposited in the files of his papers when the goods arrived—and a further presumption resting solely on the former that no notice by mail or messenger was given when the goods arrived to any other member of the firm or authorized employee, it wholly fails to discharge the burden resting solely on plaintiff to disprove the reception of such notice by some one authorized to receive it. Without connecting the fact proven, i. e. the failure of the witness to find the notice at the time of his search, by these two links created by consecutive infer-

ences, there is a fatal break in the chain of proof by which plaintiff sought to establish the nonreception by its consignees of due notice of the arrival of the goods sued for. The indulgence of these two inferences was contrary to established legal principles governing the potency of evidence. The law does not permit one inference to be piled upon another. To have any probative force an inference must be logically and immediately connected with the fact proven. It can not be so connected through the medium of an intervening inference. Glick v. Railway, 57 Mo. App. loc. cit. 104, and cases cited; Bird v. Sellers, 113 Mo. 580; Bigelow v. Railway, 48 Mo. App. 367. The foregoing testimony adduced by plaintiff did not therefore afford substantial evidence of the failure of defendants to give to the other members of deponent's firm or an accredited employee the customary notice relied on as a ground of recovery in the reply. This hiatus in plaintiff's proof was not aided by defendant's proof, which tended to show that due notice was given the consignees of the arrival of this shipment. The jury had the right to discard the evidence on this point adduced by defendant, but the disbelief of defendant's testimony could not supply the omission in plaintiff's proof. The result is that the court erred in submitting this issue to the jury.

The remaining question arising upon the demurrer to the evidence relates to the cause of action alleged in the reply for failure to trace and locate the goods, after demand to that effect made on the thirteenth of November, 1890. There being no substantial evidence, as we have seen, in this record that defendant failed to give reasonable notice of the arrival of the goods at their point of destination, and it appearing without contradiction that the contract for their carriage to that point was performed in due time, it necessarily follows under the stipulations contained in the special contract between the parties, that defendant was

thereafter chargeable for the goods as warehouseman or depositary under a contract restricting its liability as such to acts of gross negligence, and that it occupied this status at the time of said request to trace, which was more than one month after the arrival of the goods. This restriction of liability on the part of defendant is contained in the express words of the contract evidenced by the bill of lading. That the parties had a right to make such a contract has been adjudged by the supreme court of this state in a cause where it had under review the identical clause of restriction found in the present record (Gashweiler v. Railway, 83 Mo. loc. cit. 121), hence that decision controls the rights of the parties in this case. Unless, therefore, the defendant in responding to plaintiff's request to trace on the above date was guilty of gross negligence, there can be no recovery for the last cause of action alleged in the reply. Plaintiff adduced no evidence tending to show gross negligence or bad faith on the part of defendant in dealing with the goods on the thirteenth of November, 1890, or thereafter, nor is the evidence of defendant susceptible of such an inference; on the contrary defendant's witnesses testified to a seasonable tracing and locating of the goods and to a personal notice, as well as notices through the mail, to the consignees to call for and receive them, or they would be taken to the storage house in Hoboken, N. J., where it appears they were taken on the twenty-fourth of December, 1890. Under the terms of the contract so limiting the liability of defendant as warehouseman or depositary, which was in full operation on the thirteenth of November, 1890 and thereafter; and in view of the failure of plaintiff to adduce any substantial evidence of the liability of defendant under the exemptions of the contract, there was likewise nothing to submit to the jury on the last cause of action averred in the reply, and the demurrer of defendant to the entire evidence should have been sustained under all the facts in the present record.

On the former appeal this judgment was reversed and re-manded for error in the instructions of the court. It was *not* sent back with specific directions, hence this court has full power on this appeal to correct any mistake in its view of the legal effect of the facts presented on the former appeal. Wilson v. Beckwith, 140 Mo. loc. cit. 369, and cases cited; Kelly v. Thuey, 143 Mo. loc. cit. 438. For failure of plaintiff to discharge the burden of proving either of the causes of action alleged in its reply, the judgment herein is reversed and the cause remanded. Judge Bland concurs; Judge Biggs dissents.

## DISSENTING OPINION BY JUDGE BIGGS.

The plaintiff alleged and proved that by custom or usage the railroad companies leading into New York City were expected and required to give notice of the arrival of goods. This notice, as the evidence for plaintiff tended to prove, was generally sent in the first instance by a messen-ger, who took a receipt therefor from the consignee. In case a second notice became necessary it was sent by mail. To prove that no notice of any kind was given of the arrival of the shipment in question, the plaintiff read in evidence the deposition of George Maclagan, one of the consignees. A portion of his testimony is set out in the majority opinion. In addition the witness said: "The custom is to send a notice stating that the goods have arrived, with book to take receipt of such notice. * * * It is customary to send further notices at periods ranging any where from two to three days to a month. * * * The subsequent notices generally come by mail. * * * The firm is a corpora-tion; I have no knowledge of any notices having been re-ceived by the firm; *notices received from railroad companies of the arrival of shipments are preserved among the sasdvil of our office. I searched the files myself and didn't find the notice referred to."*

In the cross-examination of the witness the following question was asked:

"Q. You would not be willing to say that your firm never received such a notice? A. I couldn't speak, of course, from my own knowledge, *but I made every effort to find out whether such notice had been received at the office.*"

My associates decide that the evidence of this witness does not furnish substantial evidence that the consignee of the goods did not receive notice of their arrival. A portion of their argument in support of this I understand, but there is some of the reasoning that I can not comprehend. The opinion speaks of the well recognized principle that one inference of fact can not be made the basis for another. How this rule can be made to apply to the testimony of Maclagan is beyond the range of my mental vision. The witness states the following as facts: It was customary to give the notices either by messenger or through the mails; that the witness did not receive notice of the arrival of the shipment in question, and that no one connected with his firm received such notice so far as he knew; that his firm preserved all such notices; that the witness had made search among the papers of the firm and failed to find any notice of the shipment, and that he had made every effort to learn whether the notice had in fact been received. From this evidence I think that it is fairly inferable that the notice was not received. This is certainly not "piling one inference upon another."

Again, it is argued that the testimony of Maclagan is worthless, as it is not supplemented by that of his two partners and of all employees of the firm who had authority to receive notices of the arrival of goods. I merely make the observation that under this ruling if any one, who was at the time connected with the firm, has since died or can not be found it would be impossible for the plaintiff to show a want of notice.

The evidence of plaintiff as to the reception of the notice was precisely the same on both trials, and it was introduced in the same order. On both trials the plaintiff assumed the burden of proving that no notice had been received. On the first appeal (70 Mo. App. loc. cit. 281) the opinion (which was written by Judge Bland), in speaking of the notice to the consignees of the arrival of the goods, states that "respondent (the plaintiff) gave testimony tending to prove *that no such notice was received by them."* The plaintiff doubtless relied on this ruling, and did not consider it necessary to strengthen its evidence as to the nonreception of the notice. Now my associates change their minds as to this question of fact, reverse the judgment and refuse to remand the cause. Comment is unnecessary. I only cite some cases which recognize the well established doctrine that on a second appeal, if the evidence is substantially the same, all rulings on the first appeal, both as to the law and facts, become *res adjudicata.* Lancaster v. Elliott, 42 Mo. App. 503; Bank v. Taylor, 62 Mo. 338; Mack v. Schneider, 57 Mo. App. 431; Schoninger v. Day, 61 Mo. App. 366; Chambers v. Smith, 30 Mo. 156.

For the foregoing reasons I dissent from the conclusion reached by my learned associates.